José L. Benítez, Petitioner and Appellant, *v.* Félix Calzada, Warden of the District Jail of Humacao, Respondent and Appellee.

No. 2556. Argued July 20, 1925.—Decided July 24, 1925.

1. Habeas Corpus—Probable Cause.—In a habeas corpus proceeding the only thing to consider is whether there is probable cause for the detention of the petitioner.

2. Id.—Id.—Evidence—Deposition.—A deposition that contains an element of evidence which when taken with other evidence shows probable cause for the detention of the petitioner is pertinent in a habeas corpus proceeding and need not be corroborated.

3. Id.—Id.—Stenographer.—The testimony of the stenographer of the district attorney is admissible in evidence to show that certain statements offered in evidence were taken down and transcribed by him as stenographer.

4. Id.—Id.—Id.—Admission of the testimony of a district attorney to the effect that he has in his possession other evidence of corroboration and confessions of the defendant is not fundamental error, especially when without that evidence the other evidence is sufficient to support the conclusion of the trial court.

District Court of Humacao, Pablo Berga, J. Order denying a petition for habeas corpus. *Affirmed.*

C. *Coll Cuchí* and G. *Cruzado Silva* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

Mr. Justice Aldrey delivered the opinion of the court.

In this habeas corpus proceeding brought in the District Court of Humacao that court found that there was probable cause for the imprisonment of the petitioner, and the only question to be considered in this appeal is whether it was shown that there was probable cause for the detention of the appellant for violation of section 511 in connection with section 50 of the Penal Code, in that he attempted maliciously to injure or destroy real or personal property not belonging to him.

On appeal the appellant alleges that the lower court erred in holding that the evidence as a whole showed that there was probable cause for his detention; in refusing to strike out the deposition of Miguel Simons; in admitting the testimony of stenographer Luis Pérez, and in refusing to strike out the testimony of the district attorney.

For the purpose of showing in the court below the existence of probable cause for the detention of petitioner José L. Benítez the district attorney presented a deposition under oath signed by Miguel Simons before the Municipal Judge of Vieques on March 5, 1925, wherein he stated that at about 2 a. m. on the 2nd day of that month Luis Daniel awoke him and asked him to get up because Pepe Benítez desired to speak to him, but as it was so late he asked him to wait until the next day; that about ten minutes later Daniel came back with Pepe, with whom he talked through the shutters of his window; that he remained alone with Pepe, who said to him: "Miguel, get up and let us go to the house of José J. Benítez; it is a very important matter for him, as it may very well cost him from two hundred to three hundred thousand dollars." The deponent replied that they should wait until the morning, because Don José might not believe them, whereupon Pepe agreed and went away; that on the next day, Monday, Pepe did not come to his house, but that about 11:30 he heard from Clemente Díaz that Pepe had said to him that in the Playas Grandes Central there had been found some dynamite cartridges in the furnaces of the locomotives, and upon hearing this the deponent started for the central; that there he obtained detailed information of all the facts, that is, that dynamite cartridges had been found in the furnaces of the locomotives; that he asked Don José whether he had received any letter asking him for money and he answered that he had not; that he returned to town and sent for Pepe saying that he wanted to talk to him immediately at his house; that when Pepe came to his room he asked him whether what he wanted to say had any connection with what had happened in the central, to which he replied that it had; that the deponent asked him whether he would accompany him to Don José's house, to which he replied that he had no objection, but that they should go in different cars so that the people would not see them together; that when the deponent saw Pepe on Monday he (Pepe) said to him among

other things, that he belonged to a communist society and that besides the dynamite found in the furnaces of the locomotives they had set two time bombs; that the deponent told Don José about his conversations with Pepe and in view of the the fact that the latter did not arrive, he went toward the central and met him on his way to Don José's house and returned with him; that there for the second time Pepe stated that he belonged to a communist society whose purpose was to destroy capital; that the members had held a meeting and had agreed to destroy one of the centrals of this Island belonging to Americans, but in view of certain circumstances that arose they decided to begin with the Playas Grandes Central, to which he insistently objected, stating that he had some relatives there; that they had set two time bombs, a large one and a small one, but he did not know the place where they were; that Don José asked him whether he was sure that the bombs had been placed and he replied that he was perfectly sure; that then he was asked how this could be prevented and he said that he could do it because he knew that they were time bombs and by taking a vessel he would have time to confer with his associates and thus ascertain where the bombs were placed and prevent them from exploding; that thereupon Don José offered him his yacht and some money so that he could immediately sail for the Island, and he left for Naguabo, as he stated that he could confer with his associates in Fajardo or Caguas, agreeing to inform Don José by telephone as soon as he knew the place where the bombs could be found. The form of the telegram that was to give us the information was agreed on and he actually sent from Caguas to the address of the deponent the following telegram: "María out of danger, but it is possible a new opinion may be given. Dr. Just will consult tomorrow in search of another treatment. Watch for cock on chimney. Dr. Juliá."

The district attorney also offered two declarations made

before him, one by Antonio Marrero, a policeman, and the other by Manuel Benítez Carrillo. From the first it appears that in the morning of March 2nd he searched the house of José L. Benítez and found under a bed two packages of fuses and 32 or 33 percussion caps of the kind found in the cartridges at the central. From the second it appears that Benítez Carrillo found dynamite cartridges in the furnaces of the locomotives and on the track at the Benítez Central in Playas Grandes, Vieques, some having been placed as blocks under the wheels of the locomotives; that José L. Benítez had gone to the Playas Grandes Central about three weeks before and had invited the deponent to look about the central, and when they came into the locomotive department he asked the deponent how they worked and told him to open some of the furnaces and saw them in operation, and also asked him to show him the furnace of a petroleum boiler existing on the back part, and afterwards, as he was his friend, he invited him to see the rest of the factory, and they went as far as the center, but he said that he was only interested in the locomotives, as this was what he liked best; that he asked him whether the locomotives worked at night and he replied that they seldom did; that he asked how many there were and what work each did, and that when he was showing him the boilers he said that that was a good place to blow up with dynamite, but the deponent thought he was not serious.

Inasmuch as these two declarations were made before the district attorney, he offered to the court the testimony of his stenographer, Luis Pérez, who stated that the declarations had been taken by him in shorthand.

To conclude, the district attorney offered his own testimony and stated that he had other declarations corroborating the other three and the admissions made by José L. Benítez, as well as other evidence of the transportation of the dynamite from San Juan to Vieques contemporaneously with the

finding of the dynamite cartridges in the furnaces of the locomotives, and also admissions of José L. Benítez about the transportation of the said dynamite and evidence of the unlawful manner in which it was transported, as it was not carried in accordance with the permit given to José L. Benítez.

[1] In a habeas corpus proceeding the guilt of the petitioner is not considered, but only whether there is probable cause for his detention until he gives bail in the amount required; and, taking the evidence as a whole, leaving aside such of it as is hearsay, as no doubt the lower court did, we are convinced that there is probable cause for the detention of the petitioner; therefore, the court below did not commit the first error assigned.

[2] In the second assignment the appellant merely avers that the deposition of Simons was immaterial and not corroborated. That deposition alone would not be sufficient to connect the appellant with the crime, but it is an element of evidence which with the other proofs show that there is probable cause for the detention of the petitioner, and it is not necessary that the deposition should be corroborated.

[3] The testimony of the district attorney's stenographer was also admissible, for, as the two witnesses to which he referred testified before the district attorney and he made the notes in shorthand, his testimony was pertinent to prove that the two declarations were the same taken down and transcribed by him.

[4] With regard to the testimony given by the district attorney, we have already said in the case of *People* v. *Pillot,* 19 P.R.R. 250, in which the district attorney gave testimony identical to that given in this case, that its admission was not fundamental error; but even discarding that testimony, the rest of the evidence would be sufficient to support the decision of the lower court and. therefore. it is affirmed.